IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

HIGH DESERT LANDSCAPE
MAINTENANCE, INC., a New Mexico
corporation,

Plaintiff,

v.                                                    No. CIV 02-1006 BB/LFG

SCHWARZE INDUSTRIES, INC., an
Alabama corporation, and CMI EQUIPMENT
SALES, INC., a Tennessee corporation,

Defendants.

MEMORANDUM OPINION
AND
ORDER ON JURISDICTION

THIS MATTER is before the Court on the motions of Defendant Schwarze

Industries, Inc. [Doc. 9], and Defendant CMI Equipment Sales, Inc. [Doc. 4], to dismiss

for lack of personal jurisdiction.  The Court having considered all of the submissions of

counsel, finds both motions should be Denied.

*Discussion*

I.     *Legal Standard*

When challenged, the plaintiff has the burden of establishing both personal

jurisdiction over a defendant and that the exercise of such jurisdiction would not violate

Due Process.  *Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991); *Origins*

*Natural Resources, Inc. v. Kotler*, 133 F. Supp. 2d 1232 (D.N.M. 2001).  When defendants file a motion under Rule 12 to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that personal jurisdiction exists.  *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984); *Rogers v. 5-Star Management.*, 946 F. Supp. 907 (D.N.M. 1996).  The Court may consider matters outside the pleadings, "accepts Plaintiffs' allegations in the complaint as true if Defendant ... does not contest them with affidavits or other materials, and resolves all factual disputes raised by conflicting affidavits in the Plaintiffs' favor."  *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1342 (D.N.M. 1994), (citing *Behagen*, 744 F.2d at 733).  Finally, "the existence of *in personam* jurisdiction under the forum state's long-arm statute is evaluated by reference to the law of the forum state."  *Id.* (citing *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990), *cert. denied*, 498 U.S. 1068 (1991).

II.    *Schwarze Motion*

    A.    *Facts*

High Desert Landscape Maintenance, Inc.'s ("High Desert") principal business is that of commercial landscape maintenance and parking lot and street sweeping. Defendant Schwarze Industries, Inc. ("Schwarze"), is in the business of the manufacture, sales, and distribution of mobile sweepers.  This lawsuit arises from a dispute involving the sale of a large commercial street sweeper manufactured by Schwarze and sold to High Desert by Defendant CMI Equipment Sales, Inc. ("CMI").

2

High Desert first became aware of Schwarze sweepers through advertising brochures distributed by Santa Fe Equipment Company. High Desert purchased its first Schwarze sweeper, an A-Tech model, from Sunstate Sweeping in Arizona.

When High Desert was interested in purchasing a larger sweeper in 2000, its President, Chuck Ferran, went on the Internet for information on sweepers and sales outlets. There was no authorized Schwarze outlet for New Mexico, so Mr. Ferran contacted Schwarze directly in Huntsville, Alabama. (Schwarze is an Alabama corporation with its principal place of business in Huntsville.) Mr. Ferran spoke to Dennis Puent, a Schwarze sales representative, who recommended a Schwarze 348-I. Mr. Ferran thought the cost of a new 348-I was too high, so he looked for an alternative. He found a used Schwarze 1995 unit online and purchased it in February 2000. Thereafter, he purchased numerous replacement parts for that unit directly from Schwarze.

By the fall of 2000 it became evident that High Desert needed additional machinery. Once again Mr. Ferran contacted Dennis Puent at Schwarze. In May 2000, Mr. Puent sent High Desert advertising brochures promoting the Schwarze Model 343-G (gas) and 343-D (diesel) vacuum type sweepers. Based on Mr. Puent's sales representations, the promotional materials and the written sales proposals provided by Mr. Puent, High Desert bought a brand new Schwarze Model 343-G vacuum sweeper directly from Schwarze in August 2002.

3

The Schwarze Model 343-G sweeper failed to function properly.  In January 2001, Schwarze honored its warranty and repurchased the 343-G machine.  In turn, on January 17, 2001, Schwarze sold to High Desert a new Schwarze 343-D sweeper.  The "D" series functioned better in Santa Fe's high altitude.

In October 2000 and each year thereafter, Mr. Ferran and his wife were invited by Schwarze to attend its annual "Roundup" held in Huntsville, Alabama.  This invitational event is offered to customers of Schwarze and includes factory tours and product demonstrations and seminars.

In the spring of 2001, High Desert required yet another sweeping machine.  High Desert contacted Dennis Puent at Schwarze and advised him of its needs.  Mr. Puent advised High Desert that a 1998 Schwarze Model 348-I vacuum sweeper had recently been traded in to Schwarze.  Mr. Puent put the deal together and High Desert purchased the 348-I model from Schwarze in April 2001.  Schwarze delivered the 348-I sweeper to High Desert on or about April 25, 2001, and thereafter High Desert ordered additional parts.

By mid-2001, it became clear that High Desert needed a bigger, more powerful machine designed specifically for street sweeping.  High Desert again called Schwarze.  Schwarze advised High Desert that the next step up was a "dedicated street sweeper."  For that purpose the Schwarze Model A4000 series sweeper was recommended.  Mr. Puent sent High Desert brochures and a videotape promoting and demonstrating the

new 2001 Schwarze A4000's features and highlights.  Mr. Puent gave a quote to High

Desert of $90,000 for a new Schwarze A4000 Regenerative Air Power.

High Desert again looked for a cheaper alternative.  Mr. Ferran saw a Schwarze

A4000 for sale in Sweeper Market Magazine, a nationally distributed trade magazine.

Mr. Ferran called and spoke with Mr. Terry Wilkes, President of CMI, a Schwarze

authorized dealer.  Mr. Wilkes told Mr. Ferran that the advertised A4000 was new, and

had never been put into service.  When Mr. Ferran mentioned to Mr. Wilkes that High

Desert had been in discussions with Schwarze, Mr. Wilkes responded that "an A4000

is an A4000 and that it will sweep anywhere."  He continued, "you can pay $90,000 to

Schwarze or you can get the same machine from me for much less" (about $69,500).  He

also told Mr. Ferran that he was selling the machine for less than "dealer cost" and that

he "needed to move the machine to make room for new product."  Finally, he said that

the A4000 came with the "full factory warranties."

High Desert made arrangements for financing and purchased the sweeper from

CMI on September 28, 2001.  Rather than have it shipped, Mr. Wilkes picked up Mr.

Ferran at the Nashville Airport and took him to CMI.  Mr. Ferran was introduced to

CMI's service manager and told to open a CMI account for parts and service for the

A4000 sweeper.

Problems arose with the A4000, and High Desert and CMI had several

conversations.  CMI began sending replacement parts, some of which were later

returned to CMI.  Despite the many telephone calls between High Desert and CMI, the sweeper's performance problems were not resolved by CMI.  Finally, after the repeated calls from Mr. Ferran regarding the malfunctioning machine, CMI's service manager admitted that he did not have  a solution.  The CMI service manager then directed Mr. Ferran to call Schwarze, which was done.

High Desert then maintained regular and consistent contact with several Schwarze representatives regarding the problems with the A4000.  Over one hundred calls were made by High Desert to Schwarze.  In response, there were numerous calls from Schwarze to High Desert.  There were also numerous parts shipments from Schwarze to High Desert attempting to resolve the machine's performance problems.  At least two Schwarze factory representatives visited High Desert to assess the problem with the defective sweeper in New Mexico.  Schwarze also arranged for at least two other Schwarze sweeper machines to be delivered to New Mexico for testing at Santa Fe's elevation.

### B.  *Jurisdiction over Schwarze*

Plaintiff relies on New Mexico's long-arm statute, § 38-1-16 NMSA 1978, to establish jurisdiction over Defendants.  In order to satisfy the requirements of this section and invest the courts of New Mexico with jurisdiction, the act complained of must meet a three-prong test:  (1) defendant must do one of the acts enumerated in Subsection A; (2) plaintiff's cause of action must arise from the specified act; and (3)

defendant must have minimum contacts sufficient to satisfy due process. *Sanchez v. Church of Scientology*, 857 P.2d 771 (N.M. 1993).

Plaintiff filed a typical kitchen sink complaint alleging various causes of action. Initially, it claimed payments were made to Schwarze and it breached a contract "by failing to deliver to High Desert a properly functioning sweeper." (Comp. ¶ 33.) Plaintiff also alleges Schwarze "negligently misrepresented that the Schwarze A4000 Model Sweeper would and could function properly and satisfactorily for Plaintiff's business purposes and in Plaintiff's geographic location." (Comp. ¶ 36.) Plaintiff further alleges fraud, breach of express and implied warranties as well as the covenant of good faith and fair dealing. It further claims unfair business practices and unjust enrichment. Each of these acts are a jurisdictional basis covered by § 38-1-16A NMSA 1978. Moreover, each cause of action is alleged to derive from Plaintiff's dealings with Schwarze, so the second requirement is satisfied.

The crux of the jurisdictional debate in this case, then, turns on whether Schwarze has sufficient contacts with New Mexico so that the exercise of jurisdiction over the Defendant would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir. 2000). This test is satisfied if defendant's conduct is such that it "should reasonably anticipate being haled into court" in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985), quoting *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Home-Stake Production Co. v. Talon Petroleum*, 907 F.2d 1012 (10th Cir. 1990).

While Schwarze did not sell the A4000 directly, it did send numerous employees to New Mexico to fix it.  Along with its history of business dealings with Plaintiff, this may be sufficient to constitute doing business.  *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260 (5th Cir. 1983); *Katz Communications, Inc.  v. Evening News Ass'n*, 705 F.2d 20 (2d Cir. 1983); *Tercero v. Roman Catholic Diocese*, 980 P.2d 77 (N.M. 1999).  In addition to likely jurisdiction under the doing business provision, Plaintiff has alleged various tortious misrepresentations sent into New Mexico by Schwarze.  *See Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972); *Richmar Development, Inc. v. Midland Doherty Servs., Ltd.*, 717 F. Supp. 1107 (W.D.N.C. 1989); *Rose v. Franchetti*, 713 F. Supp. 1203 (N.D. Ill. 1989).  These satisfy the requirement the claims arise out of a tortious act that occurred within New Mexico.  *Roberts v. Piper Aircraft Corp.*, 670 P.2d 974 (N.M. App. 1983).  These transactions make it reasonable for Schwarze to conclude it "should reasonably anticipate being haled into court" in New Mexico.

## III.   *Jurisdiction over CMI Equipment*

This is a much closer question regarding CMI.  While no discovery has yet been initiated, no one suggests CMI sold other equipment in New Mexico before or since this transaction.  They have no physical presence or employees within the state.  In this context a single sale would normally be insufficient.  *Pullen v. Hughes*, 481 F.2d 602

(10th Cir. 1973); *Vissarraga v. Gates Rubber Co.*, 717 P.2d 596 (N.M. App. 1986).  A single sale may, however, be sufficient if it demonstrates the seller was aware of where the product was going and the sale was significant enough that the seller would thus recognize it was voluntarily initiating a significant transaction involving the proposed forum. *Etzler v. Dille & McGuire Mfg. Co.*, 249 F. Supp. 1 (W.D. Va. 1965); *Ewing v. Lockheed Aircraft Corp.*, 202 F. Supp. 216 (D. Minn. 1962); *cf . McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957) (jurisdiction based on issuance of a single insurance policy does not violate due process).   Committing a single tortious act within the jurisdiction, as here alleged, may also constitutionally support personal jurisdiction. *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001); *Rosenblatt v. American Cyanamid Co.*, 86 S. Ct. 1 (1965) (Goldberg, J.).

In the present case the President of CMI, Mr. Wilkes, spoke directly to Mr. Ferran, the President of High Desert.  He allegedly made several statements which are the very subject of this lawsuit.  Moreover, Mr. Wilkes picked up Mr. Ferran at the airport and personally showed him the A4000.  Mr. Wilkes therefore purposely initiated the sale and delivery of a substantial piece of equipment that he was aware was intended for use in New Mexico.  *See Austin v. North American Forest*, 656 F.2d 1076 (5th Cir. 1981).  This is clearly different than a foreign manufacturer receiving a computer order to ship 1 out of a 900,000 batch run of tires into New Mexico without any managerial personnel having any awareness of the transaction.  Based on the high level of

9

negotiations and the fact Mr. Wilkes clearly knew the A4000 was on its way to New Mexico, he should not be shocked at being haled into a New Mexico court to answer for the statements attributed to him.

## O R D E R

For the foregoing reasons, the motions of both Defendant Schwarze and Defendant CMI to be dismissed for lack of personal jurisdiction are DENIED.

Dated at Albuquerque this 21st day of November, 2002.

BRUCE D. BLACK
United States District Judge

For Plaintiff:
    Mark Anthony Acuna, THE JAFFE LAW FIRM, Albuquerque, NM
For Defendant Schwarze:
    Paul E. Houston, Kenneth J. Tager, STURGES & HOUSTON, Albuquerque, NM
For Defendant CMI:
    James P. Bieg, RODEY DICKASON SLOAN AKIN & ROBB, Santa Fe, NM